**EXHIBIT A**

**Bloomberg's Requests for Admission**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OPTIMA MEDIA GROUP LTD; OPTIMA SPORTS MANAGEMENT INTERNATIONAL (UK) LTD, <br><br> Plaintiffs, <br><br> – against – <br><br> BLOOMBERG L.P., <br><br> Defendant. | No. 17-cv-01898 (AJN) |

## BLOOMBERG L.P.'S REQUESTS FOR ADMISSION TO PLAINTIFFS OPTIMA MEDIA GROUP LTD AND OPTIMA SPORTS MANAGEMENT INTERNATIONAL (UK) LTD

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure (the "Federal Rules") and Rules 26.2 and 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules"), Bloomberg L.P. ("Bloomberg"), by its attorneys, hereby requests that Plaintiffs Optima Media Group Limited and Optima Sports Management International (UK) Limited (collectively "Plaintiffs" or "Optima") provide answers to the following Requests for Admission (the "Requests") within thirty (30) days of service in accordance with the definitions and instructions set forth below.  If an answer or objection to these Requests is not served by that date, each matter will be deemed admitted.

### DEFINITIONS

Solely for the purpose of these Requests, the following definitions shall apply, without regard to capitalization:

1.      The words and phrases used in these Requests shall have the meanings ascribed to them under the Federal Rules and the Local Rules.  In addition, the following terms have the meanings set forth below whenever used in any Request.

2.      Consistent with Local Rule 26.3(a), the definitions set forth at Local Rule 26.3(c)(1)–(7) of "communication," "document," "identify," "parties," "person," and "concerning" are incorporated herein by reference.

3.      "Bloomberg" means Bloomberg L.P. (including its parents, divisions, subsidiaries, affiliates, and corporate predecessors), its present or former directors, owners, officers, members, employees, agents, representatives, and attorneys and any other person under its control.

4.      "Optima" means Plaintiffs Optima Media Group Limited and Optima Sports Management International (UK) Limited (including parents, divisions, subsidiaries, affiliates, and corporate predecessors), any present or former directors, owners, officers, members, employees, agents, representatives, and attorneys, any other persons or entities under control of either entity, and any persons acting on behalf of either entity, whether authorized or not.  For the avoidance of doubt, Optima includes Bloomberg Television Nigeria Limited ("BTVA Nigeria"), its predecessor Bloomberg Televisions Nigeria (NIG) Limited ("BTNL"), Bloomberg Television Africa Limited ("BTVA UK"), Optima Media Group (PTY) Limited ("BTVA South Africa"), and any present or former directors, owners, officers, members, employees, agents, representatives, and attorneys, any other persons or entities under control of either entity, and any persons acting on behalf of either entity, whether authorized or not.  Optima shall further mean any creditor, person, or entity with control over Plaintiffs herein.

5.      "You" and "your" means Optima and Optima's.

6.      The "Agreement" is the Content Sharing and Licensing Agreement executed by the parties to this action on January 1, 2012, in its original form and all amended forms.  For the avoidance of doubt, the Agreement includes, for purposes of these Definitions, the Amendment negotiated by Bloomberg and Optima in 2012 (the "Amendment").

7.      "This Litigation" means the above-captioned litigation, Optima Media Group Ltd. et al. v. Bloomberg L.P., No. 17–CV–01898–AJN (S.D.N.Y.).

8.      "Channel Window" means the live weekday programming window or windows of up to four hours per day in duration that Optima agreed to produce under the Agreement.

9.      "Employee" means any individual, whether employee, contractor, freelancer, officer, director, or otherwise, engaged or previously engaged (even if not compensated) to provide goods or services (i) to Optima, (ii) to any entity affiliated with Optima, or (iii) under Optima's control.  For the avoidance of doubt, the term "employee" includes, but is not limited to, Rotimi Pedro (a/k/a "Richard Rotimi Pedro"), Edson Aigbe, Olumide Amure, Adeola Bali, Richard Harrison, Andrew Howes, Simon Miller, Maxwell Nzekwe, Mojisola Olaseni, Ugochi Pedro, and Toyin Subair, and further includes, but is not limited to, Felix Adefuwa, Yesimi Adesanya, Adediji Adutola, Morgan Almeida, Fred Allen, Dewunmi Amure, Oluwatunji Andrews, Miranda Atty, Chukwinwike Arah, Faarooq Arogundade, Kieran Baker, Oladipo Bamishile, Begonia Blanco-Prieto, Caroline Bodin-Soufflet, Chris Breytenbach, Graham Bryce, Suzanne Chetty, Pannie Christou, Ifeanyi Chukwujekwu, Colin Cosier, Alex Court, Anietie Victor Edet, Charles Emuze, Idongesit Essien, Grace Fidelis, Ian Gathard, Paula Jean Gilbert, Brian Gillingham, Eleni Giokos, Anne Gonschorek, Elizabeth Gould, Nelly Habibzadeh, Steve Halis, Martin Henlan, Kenechukwu Isichei, Karin Johansson, Robbie Jones, Rizwan Khan, Audrey Letendart, Stuart Lowman, Sharon Machira, Jordan Maders, Nthuthoko Mageba, Jon McCammont, Alan Mercer, Bathabile Modutoane, Agathe Monmont, Kelly Mwaura, Alois Naka, Ollie Nathan, Ijeoma Ndukwe, Fanos Ngwenya, Chinyere Nwanya, Brianne O'Brien, Gary O'Callaghan, Tolu Ogunlaiye, Oluseun Ogunlowo, Dolly Ohanyere, Uche Okoronkwo, Oluwatosin Olaseinde, Lindsey Oliver, Boason Omofaye, Olusegun Onabanjo, Oluseyi Onajin, Oluwaseun Osipitan, Buki Osunkeye, Frederick

Ozobia, Romil Patel, Rick Plata, Claire Proudfoot, Jeremy Roberts, Nick Sale, Bronwyn Seaborne, Avoseh Sejiro, Aniefiok Solomon, Dennis Somerton, Ikpongke Sotiloye, Alan Streluk, Maneeva Suri, Alpha Sway, Jane Thompson, Stelios Thoukidides, Funmi Unuajefe, Edward W. Wallace III, Kelly Wainana, Edward Wiafe, and Andrew Zankanani.

10.    "Vendor" means any entity, even if the entity has only a sole employee, engaged or previously engaged to provide goods or services to (i) Optima, (ii) to any entity affiliated with Optima, or (iii) to any entity under Optima's control.  For the avoidance of doubt, the term "vendor" includes, but is not limited to, A24 Media Ltd. ("A24"), ABS, Absolutely Admin, Advanced Broadcast Services Ltd. ("ABS"), Africa Practice, Agence France-Presse ("AFP"), Alder Consulting, Allied Computers, Alpha Sway, Ateme S.A., Asset Management Corporation of Nigeria ("AMCON"), Arqiva, Artscape, Audio Network, BDA Creative Limited, Bloomberg Sports, Career Legal, Cedar Point Investment Group, Centrifugal, CFG Advisory, Christy Media Solutions, CIM Global Business, Citi Merit Logistics, Emergence Growth, EmSes Executive Managed Suites (Pty) Ltd. ("EmSes"), FA & JM Electrical & Engineering, Film Freight, Findrex Travels and Tours Ltd., Flax Films, Flight Centre (South Africa) Pty Ltd., Getty Images, Inc. ("Getty"), Globecast, Glitzy Travels Ltd., Google, Halogen Security Company Ltd., Harlequin, Heritage Bank, House J Resorts, HYF, Ikeja Electric Disribution Company Plc, Johannesburg Stock Exchange, Lloyd Anderson Ltd, LTY Architecture, Lucro Auditing PLC, Malcolm Fried, Manzini Media, Massey Productions, MB Capital Services GmbH, Midia Pro, Miramedia Ltd., Netcom Africa, Octopus Newsroom, Office Management Services, Ole Media Group, Optimum Corporate Communications, Playbox, Proactive UK Ltd., Profiliant, Projects Department Ltd., Quirk E-Marketing, Richard Armah, Richard Kasselman, Sashkeys Media Ltd., Satlink Communciations Ltd., Scena Pro, Squallstar Ltd., Team Talk Media (Pty) Ltd., Telemedia (Pty)

Ltd., Transcription Services, Ultimate Interiors, Ventra Media Group, VizRT, WPEngine Support, WTS Group of Companies, and Yvent Kouture.

11.     "Complaint" means the operative complaint brought by the Plaintiffs in this Litigation.

12.     "Counterclaims" means the operative counterclaims brought by Bloomberg in this Litigation.

13.     "Date" means the exact day, month, and year, if ascertainable, and if not, the best approximation, including relationships to other events.

14.     "Includes" and "including" mean "includes but not limited to" and "including but not limited to" respectively.

15.     "Lagos Studio" means the studio located at 33 Oladipo Bateye Street, GRA, Ikeja, Lagos, Nigeria.

16.     "Nonpayment or Late Payment" means a failure to make a payment (in whole or in part) as the payment came due, either on time or at all.

17.     The "Project" means the Agreement, the Amendment, and the performance of Bloomberg and Optima thereunder.

18.     "Relating" or "related" means affecting, concerning, constituting, dealing with, describing, embodying, evidencing, identifying, involving, providing a basis for, reflecting, regarding, respecting, stating, or in any matter whatsoever pertaining, in whole or in part, to the subject.

## INSTRUCTIONS

Solely for the purpose of these Requests, the following instructions shall apply:

1.      In addition to the instructions and definitions contained herein, these Requests incorporate the instructions contained in any applicable Federal Rule, Local Rule, or Individual Practice of the presiding Judge.

2.      Each Request shall be answered completely and separately.

3.      If an objection is made, the reasons therefore shall be stated.  The answer shall specifically deny the matter or set forth in detail the reasons why you cannot truthfully admit or deny the matter.

4.      Pursuant to Rule 36(a) of the Federal Rules, a denial shall fairly meet the substance of the Request, and when good faith requires that you qualify an answer or deny only a part of the matter of which an admission is requested, you shall specify so much of it as is true and qualify or deny the remainder.

5.      With respect to each Request, if a claim of privilege provides the basis, in whole or in part, upon which you assert that you cannot truthfully and without reservation admit or deny the matter, identify, for each such matter, the nature of the privilege asserted, and the basis for the claim of privilege.

6.      If you answer a request on the basis that you lack sufficient information to respond, you must describe any and all efforts made to inform yourself of the facts and circumstances necessary to answer or respond.

7.      The obligation to respond to these Requests is a continuing obligation, pursuant to Rule 26(e) of the Federal Rules.  If, at any time after responding to these Requests, you discover additional information that will make your responses to these Requests more complete or correct, supplement or correct your responses as soon as is reasonably possible.

8.      These Requests are without prejudice to, or waiver of, Bloomberg's right to conduct further discovery, including the service of additional Requests.  In particular, Bloomberg reserves the right to serve additional Requests in light of Optima's delayed production of certain responsive emails, and the parties' continuing negotiations over the propriety of certain of Optima's privilege designations.

9.      Unless otherwise stated in particular Requests, or unless otherwise agreed upon by the parties or ordered by the Court, each Request covers all periods of time from January 1, 2011 through December 31, 2015 (the "Relevant Period").

## REQUESTS FOR ADMISSION

1.      Admit that Optima did not "notif[y]" Bloomberg of the existence of any purported *force majeure* "<u>by mail, courier, or personal delivery</u>," to "Bloomberg at 731 Lexington Avenue, New York, New York 10022, Attention: Matthew Kelman with a copy to Willkie Farr & Gallagher at 787 7th Avenue, New York, New York 10019-6099, Attention: Richard K. DeScherer."

2.      Admit that Optima did not "notif[y]" Bloomberg of the existence of any purported *force majeure* "<u>by electronic mail (confirmed by concurrent recorded delivery mail, postage prepaid</u>)" to "Bloomberg at 731 Lexington Avenue, New York, New York 10022, Attention: Matthew Kelman with a copy to Willkie Farr & Gallagher at 787 7th Avenue, New York, New York 10019-6099, Attention: Richard K. DeScherer."

3.      Admit that at least the following Employees worked on the Project in at least **<u>the United Kingdom</u>**:

   (a)     Agathe Monmont
   (b)     Audrey Letendart
   (c)     Ayesha Durgaree
   (d)     Brianne O'Brien
   (e)     Caroline Bodin-Soufflet
   (f)     Edward W. Wallace III
   (g)     Ian Gathard
   (h)     Ijeoma Ndukwe
   (i)     Jordan Maders
   (j)     Kenechukwu Isichei
   (k)     Kieran Baker
   (l)     Lindsey Oliver

7

(m)     Martin Henlan
(n)     Manveena Suri
(o)     Morgan Almeida
(p)     Nelly Habibzadeh
(q)     Ollie Nathan
(r)     Richard Harrison
(s)     Rizwan Khan
(t)     Romil Patel
(u)     Sam Rowntree
(v)     Stelios Thoukidides
(w)     Suzanne Chetty

4.      Admit that at least the following Employees worked on the Project in at least **South Africa**:

(a)     Alois Naka
(b)     Alpha Sway
(c)     Anne Gonschorek
(d)     Bathabile Modutoane
(e)     Bronwyn Seaborne
(f)     Chris Breytenbach
(g)     Claire Proudfoot
(h)     Eleni Giokos
(i)     Elizabeth Gould
(j)     Fanos Ngwenya
(k)     Jane Thompson
(l)     Karin Johansson
(m)     Ntuthuko Mageba
(n)     Paula Gilbert
(o)     Rick Plata
(p)     Stuart Lowman

5.      Admit that at least the following Employees worked on the Project in at least **Nigeria**:

(a)     Alan Streluk
(b)     Begonia Blanco-Prieto
(c)     Faarooq Arogundade
(d)     Felix Adefuwa
(e)     Idongesit Essien
(f)     Oladipo Bamishile

6.      Admit that Optima received complaints, in or about the following months, from at least the following Employees, stating that Optima had failed to make payments to those Employees as payments became due:

(a)   **July 2013**:
  (i)  Caroline Bodin-Soufflet (OPT000200587).

(b)   **September 2013**:
  (i)  Alan Streluk (BBG_00178605);
  (ii) Brianne O'Brien (OPT000208331);
  (iii) Caroline Bodin-Soufflet (OPT000520012);
  (iv) Stelios Thoukidides (OPT000143515).

(c)   **October 2013**:
  (i)  Begonia Blanco-Prieto (OPT000213482);
  (ii) Caroline Bodin-Soufflet (OPT000145980);
  (iii) Felix Adefuwa, as communicated via an email from Begonia Blanco-Prieto (OPT000213482);
  (iv) Karin Johansson (BBG_00222004);
  (v) Several members of the BTVA SA staff, as communicated via an email from Karin Johansson (BBG_00222004).

(d)   **November 2013**:
  (i)  Alois Naka, as communicated via an email from Rick Plata (OPT000216574);
  (ii) Begonia Blanco-Prieto, as communicated via an email from Rick Plata (OPT000216574);
  (iii) Claire Proudfoot (BBG_00260255);
  (iv) Caroline Bodin-Soufflet (OPT000147385);
  (v) Elizabeth Gould (BBG_00257245; BBG_00257272);
  (vi) Karin Johansson (BBG_00252763; BBG_00184564; BBG_00271571);
  (vii) Rick Plata (OPT000216574);
  (viii) Several members of the BTVA SA staff, as communicated via emails from Karin Johansson (BBG_00252763; BBG_00184564).

(e)   **December 2013**:
  (i)  Alois Naka (OPT000222577);
  (ii) Begonia Blanco-Prieto, as communicated via an email from Rick Plata (OPT000222577);
  (iii) Bronwyn Seaborne (BBG_00275584);
  (iv) Faarooq Arogundade, as communicated via an email from Rick Plata (OPT000222577);
  (v) Felix Adefuwa, as communicated via an email from Rick Plata (OPT000222577);
  (vi) Karin Johansson (BBG_00191846; BBG_00270111; BBG_00195120; BBG_00274839);
  (vii) Rick Plata (OPT000222577);
  (viii) Several members of the BTVA SA staff, as communicated via emails from Karin Johansson (BBG_00262445; BBG_00191846; BBG_00270111).

(f) **January 2014**:
  (i)   Bronwyn Seaborne (OPT000224910);
  (ii)  Karin Johansson (OPT000227769);
  (iii) Rizwan Khan (OPT000153915).

(g) **February 2014**:
  (i)   Bronwyn Seaborne (BBG_00192695);
  (ii)  Karin Johansson (OPT000227769).

(h) **April 2014**:
  (i)   Martin Henlan (OPT000568216).

(i) **May 2014**:
  (i)   Rizwan Khan (OPT000323771).

(j) **June 2014**:
  (i)   Alpha Sway, as communicated via an email from Richard Harrison (OPT000258042);
  (ii)  Bronwyn Seaborne (OPT000258787);
  (iii) Elizabeth Gould, as communicated via an email from Richard Harrison (OPT000328595);
  (iv)  Richard Harrison (OPT000257743);
  (v)   Several members of the BTVA SA staff, as communicated via an email from Richard Harrison (OPT000258646);
  (vi)  Several members of the BTVA UK staff, as communicated via an email from Richard Harrison (OPT000258646).

(k) **July 2014**:
  (i)   Alpha Sway (BBG_00178633);
  (ii)  Anne Gonschorek (OPT000329730);
  (iii) Chris Breytenbach (OPT000554968);
  (iv)  Elizabeth Gould (OPT000329730; OPT000166499);
  (v)   Fanos Ngwenya, as communicated via an email from Jane Thompson (OPT000110939);
  (vi)  Ian Gathard (OPT000261809).

(l) **August 2014**:
  (i)    Agathe Monmont (OPT000263042);
  (ii)   Alpha Sway (BBG_00178633);
  (iii)  Edward W. Wallace III (OPT000263067);
  (iv)   Elizabeth Gould (OPT000112623);
  (v)    Fanos Ngwenya (OPT000338676);
  (vi)   Kenechukwu Isichei (OPT000339657);
  (vii)  Morgan Almeida (OPT000481819);
  (viii) Ollie Nathan (OPT000112729; OPT000113551);
  (ix)   Richard Harrison (OPT000114404);

       (x)     Several members of the BTVA UK staff, as communicated via an email from Richard Harrison (OPT000481385; OPT000114404).

(m)  **September 2014**:
- (i)     Agathe Monmont, as communicated via an email from Audrey Letendart (OPT000339716);
- (ii)    Alpha Sway (BBG_00178633);
- (iii)   Audrey Letendart (OPT000339716);
- (iv)   Bronwyn Seaborne (OPT000016463);
- (v)    Karin Johansson (BBG_00024756; BBG_00025197);
- (vi)   Kenechukwu Isichei (OPT000339657);
- (vii)  Morgan Almeida (OPT000265527);
- (viii) Ollie Nathan (OPT000114818);
- (ix)   Romil Patel, as communicated via an email from Audrey Letendart (OPT000339716);
- (x)    Several members of the BTVA UK staff, as communicated via an email from Kieran Baker (OPT000519937).

(n)  **October 2014**:
- (i)     Alois Naka (OPT000172952);
- (ii)    Chris Breytenbach, as communicated via an email from Jane Thompson (OPT000408522);
- (iii)   Kieran Baker (OPT000541681).

(o)  **November 2014**:
- (i)     Elizabeth Gould (BBG_00011790);
- (ii)    Fanos Ngwenya (OPT000275661);
- (iii)   Karin Johansson (OPT000275613);
- (iv)   Kieran Baker (OPT000033036);
- (v)    Lindsey Oliver (OPT000353321).

(p)  **December 2014**:
- (i)     Begonia Blanco-Prieto (OPT000134852);
- (ii)    Bronwyn Seaborne (OPT000275905);
- (iii)   Ian Gathard (OPT000493278);
- (iv)   Jordan Maders (OPT000558381);
- (v)    Kieran Baker (OPT000541681; OPT000525471);
- (vi)   Morgan Almeida, as communicated via letters from  Pamela Morton (OPT000122616; OPT000493852).

(q)  **January 2015**:
- (i)     Begonia Blanco-Prieto, as communicated via an email from Richard Harrison (OPT000023265);
- (ii)    Eleni Giokos (OPT000022767);
- (iii)   Ian Gathard (BBG_00059256);
- (iv)   Morgan Almeida (OPT000362208);
- (v)    Rick Plata (OPT000124475);

(vi)    Several members of the BTVA UK staff, as communicated via emails from Richard Harrison (OPT000182008) and Sophie Mongalvy (BBG_ 00057923).

(r)    **February 2015**:
- (i)    Lindsey Oliver (OPT000193210);
- (ii)    Agathe Monmont, as communicated via an email from Nelly Habibzadeh (OPT000038461; OPT000185129);
- (iii)    Audrey Letendart (OPT000499829, OPT000371645);
- (iv)    Ayesha Durgaree, as communicated via an email from Nelly Habibzadeh (OPT000038461; OPT000185129);
- (v)    Fanos Ngwenya (OPT000496595);
- (vi)    Ian Gathard (BBG_00065752);
- (vii)    Ijeoma Ndukwe, as communicated via an email from Nelly Habibzadeh (OPT000038461; OPT000185129);
- (viii)    Jordan Maders, as communicated via an email from Nelly Habibzadeh (OPT000038461; OPT000185129);
- (ix)    Manveena Suri, as communicated via an email from Nelly Habibzadeh (OPT000038461, OPT000185129);
- (x)    Nelly Habibzadeh (OPT000038461; OPT000185129);
- (xi)    Ntuthuko Mageba (OPT000496595);
- (xii)    Romil Patel, as communicated via an email from Nelly Habibzadeh (OPT000038461; OPT000185129);
- (xiii)    Sam Rowntree, as communicated via an email from Nelly Habibzadeh (OPT000038461; OPT000185129);
- (xiv)    Several members of the BTVA UK staff, as communicated via emails from Agathe Monmont, Jordan Maders, and Audrey Letendart (OPT000366166);
- (xv)    Suzanne Chetty, as communicated via an email from Nelly Habibzadeh (OPT000038461; OPT000185129).

(s)    **March 2015**:
- (i)    Audrey Letendart (OPT000371645);
- (ii)    Bronwyn Seaborne (OPT000371536; OPT000287511);
- (iii)    Fanos Ngwenya (OPT000371536);
- (iv)    Ntuthuko Mageba (OPT000371536; OPT000372617);
- (v)    Paula Gilbert (OPT000373278);
- (vi)    Romil Patel (BBG_00083167);
- (vii)    Sam Rowntree (OPT000374109);
- (viii)    Several members of the BTVA SA staff, as communicated via an email from Richard Harrison (OPT000371536).

(t)    **April 2015**:
- (i)    Audrey Letendart (BBG_00085384);
- (ii)    Idongesit Essien (OPT000026499);
- (iii)    Rick Plata (OPT000512182);

       (iv)     Several members of the BTVA UK staff, as communicated via an emails from Eleni Giokos (OPT000511925) and Karin Johansson (OPT000512761);

       (v)      Suzanne Chetty (OPT000289246).

(u)    **May 2015**:
       (i)       BTVA Nigeria employees, as communicated via an email from Richard Harrison (OPT000518761);
       (ii)     BTVA South Africa employees, as communicated via an email from Richard Harrison (OPT000518761);
       (iii)    BTVA UK employees, as communicated via an email from Richard Harrison (OPT000518761);
       (iv)     Chris Breytenbach (OPT000289712);
       (v)      Ntuthuko Mageba (OPT000411398, OPT000567108);
       (vi)     Optima Media Group London Team, as communicated via an email from Suzanne Chetty (OPT000567070);
       (vii)    Paula Gilbert (OPT000567108);
       (viii)   Richard Harrison (OPT000566495);
       (ix)     Rick Plata (OPT000576265);
       (x)      Sam Rowntree (OPT000566744);
       (xi)     Simon Miller (OPT000572242);
       (xii)    Stelios Thoukidides (OPT000289590);
       (xiii)   Suzanne Chetty (OPT000289590);
       (xiv)   Various members of BTVA Nigeria staff, as communicated via an email from Yemisi Lawal (OPT000572167).

(v)    **June 2015**:
       (i)       Richard Harrison (OPT000566608);
       (ii)     Sam Rowntree (OPT000566744).

(w)    **July 2015**:
       (i)       Oladipo Bamishile (OPT000600667);
       (ii)     Samuel Williams (OPT000600667).

(x)    **August 2015**:
       (i)       Jordan Maders (OPT000399793);
       (ii)     Richard Harrison (OPT000519270).

7.    Admit that Alan Streluk:

    (a)    resigned from the Project on or about September 4, 2013. (BBG_00178605);

    (b)    identified Nonpayment or Late Payment by Optima as a reason for his resignation in a September 4, 2013 email. (BBG_00178605)

8.    Admit that Alan Mercer:

    (a)    resigned from the Project on or about January 7, 2014. (OPT000223025);

> (b)    identified Nonpayment or Late Payment by Optima as a reason for his resignation in a January 7, 2014 email. (OPT000223025).

9.    Admit that Rizwan Khan:

> (a)    resigned from Optima on January 22, 2014. (OPT000153915);
> (b)    identified Nonpayment or Late Payment by Optima as a reason for his resignation in a January 22, 2014 email. (OPT000153915).

10.   Admit that Ollie Nathan:

> (a)    resigned from Optima on or about September 11, 2014. (BBG_00135262; OPT000029486);
> (b)    identified Nonpayment or Late Payment by Optima as a reason for his resignation. (BBG_00135262).

11.   Admit that Jeremy Roberts:

> (a)    left the Project on or about February 3, 2015. (BBG_00061278);
> (b)    identified Nonpayment or Late Payment by Optima as a reason for his leaving the Project. (BBG_00061278).

12.   Admit that on or around March 3, 2015, at least the following Employees in Optima's London and South Africa offices stopped working due to Nonpayment or Late Payment by Optima:

> (a)    Agathe Monmont (BBG_00073918; BBG_00164984; BBG_00075234);
> (b)    Audrey Letendart (BBG_00073918; BBG_00164984; BBG_00075234);
> (c)    Ayesha Durgahee (BBG_00073918; BBG_00164984; BBG_00075234);
> (d)    Bathabile Modutoane (BBG_00073918; BBG_00164984; BBG_00075234);
> (e)    Eleni Giokos (BBG_00073918; BBG_00164984; BBG_00075234);
> (f)    Fanos Ngwenya (BBG_00073918; BBG_00164984; BBG_00075234);
> (g)    Ijeoma Ndukwe (BBG_00073918; BBG_00164984; BBG_00075234);
> (h)    Jane Thompson (BBG_00073918; BBG_00164984; BBG_00075234);
> (i)    Jordan Maders (BBG_00073918; BBG_00164984; BBG_00075234);
> (j)    Karin Johansson (BBG_00073918; BBG_00164984; BBG_00075234);
> (k)    Manveena Suri (BBG_00073918; BBG_00164984; BBG_00075234);
> (l)    Nelly Habibzadeh (BBG_00073918; BBG_00164984; BBG_00075234);
> (m)    Sam Rowntree (BBG_00073918; BBG_00164984; BBG_00075234);
> (n)    Stelios Thoukidides (BBG_00073918; BBG_00164984; BBG_00075234);
> (o)    Stuart Lowman (BBG_00073918; BBG_00164984; BBG_00075234);
> (p)    Suzanne Chetty (BBG_00073918; BBG_00164984; BBG_00075234).

13.   Admit that Romil Patel:

> (a)    resigned from Optima on March 29, 2015. (BBG_00083167);

      (b)      identified Nonpayment or Late Payment by Optima as a reason for his resignation in a March 29, 2015 email. (BBG_00083167).

14.      Admit that on April 3, 2015, Audrey Letendart informed Optima that she was "unable to afford going to work anymore" due to Nonpayment or Late Payment. (BBG_00085384).

15.      Admit that Sam Rowntree:

      (a)      resigned from Optima on April 20, 2015. (BBG_00088310);
      (b)      identified Nonpayment or Late Payment by Optima as a reason for his resignation in a April 20, 2015 email. (BBG_00088310).

16.      Admit that in or around April 2015, Employees in Optima's (BTVA's) London office stopped working due to Nonpayment or Late Payment by Optima (BBG_00087732), and that the "majority" of Optima employees in the London office were not working for a period of weeks. (BBG_00090017).

17.      Admit that on December 1, 2014, Bronwyn Seaborne informed Optima that she had "lodged a formal internal grievance against Bloomberg TV Africa" as a result of Nonpayment or Late Payment. (OPT000275905).

18.      Admit that beginning on January 2015, the National Union of Journalists in the United Kingdom ("NUJ") contacted Optima to collect payment on behalf of Morgan Almeida. (OPT000362208; OPT000281463).

19.      Admit that no later than February 2015, Kieran Baker sought legal assistance from the NUJ to collect payment from Optima. (*see, e.g.*, BBG_00018153; BBG_00018407).

20.      Admit that on April 29, 2015, Optima told Bloomberg that the NUJ had "referred" a contractual "disput[e]" between Kieran Baker and Optima. (BBG_00018407).

21.      Admit that on at least August 19, 2015, August 21, 2015, and November 19, 2015, Karin Johansson and Ali Naka lodged complaints with Optima for Nonpayment or Late Payment by Optima on behalf of themselves and others, including Bathabile Modutoane, Bronwyn Seaborne, Jane Thompson, Fanos Ngwenya, Ntuthuko Mageba, Paula Gilbert, and Stuart Lowman. (BBG_00020593, BBG_00020617, BBG_00021580).

22.      Admit that on November 1, 2013, Caroline Bodin-Soufflet informed Optima that "late payment issues are becoming a major problem for me as again I cannot meet my bills and rent deadlines this month."  (OPT000147385).

23.      Admit that on September 30, 2014, Karin Johansson informed Optima that her bank account had been "red flagged" and her bank was "refusing to grant [her] an overdraft" due to "irregularities in salary payments every month for the past year." (BBG_00025197).

24.     Admit that on August 6, 2014, Ollie Nathan informed Optima that "if my salary is not in my account by tomorrow morning, I will not be able to put petrol in my bike." (OPT000112729).

25.     Admit that:

(a)     Between at least April 13, 2015 and May 5, 2015, the Bloomberg TV Africa program *Africa Trending* had not been being produced and/or distributed. (*e.g.*, BBG_00093580);

(b)     Nonpayment or Late Payment of Employees by Optima was identified as the reason for the events described in Request 25(a) (*e.g.*, BBG_00093580).

26.     Admit that:

(a)     Between at least April 13, 2015 and May 5, 2015, the Bloomberg TV Africa program *Africa in Focus* had not been being produced and/or distributed. (*e.g.*, BBG_00093580);

(b)     Nonpayment or Late Payment of Employees by Optima was identified as the reason for the events described in Request 26(a) (*e.g.*, BBG_00093580).

27.     Admit that:

(a)     In the week of May 5, 2015, the Bloomberg TV Africa program *African Business Weekly* was cancelled. (*e.g.*, BBG_0093580);

(b)     Nonpayment or Late Payment of Employees by Optima was identified as the reason for the events described in Request 27(a) (*e.g.*, BBG_0093580).

28.     Admit that for a period prior to May 5, 2015, Optima had "not been able to produce" the show *Invest DRC* "due to payment issues" on the part of Optima. (BBG_0093580).

29.     Admit that for a period prior to May 5, 2015, Optima had "not been able to produce" the show *African Women to Watch* "due to payment issues" on the part of Optima. (BBG_0093580).

30.     Admit that on July 14, 2015, Optima:

(a)     Owed at least £150,000 to Employees based in London. (BBG_00020479; BBG_00020480);

(b)     Owed at least $150,000 to Employees based in South Africa. (BBG_00020479; BBG_00020480);

(c)     Owed at least $250,000 to Employees based in Nigeria (BBG_00020479; BBG_00020480).

31.     Admit that by October 30, 2015, Optima owed at least 2,000,000.00 Rand in outstanding salaries to Paula Gilbert, Eleni Giokos, Karin Johansson, Stuart Lowman, Ntuthuko Mageba, Bathabile Modutoane, Alois Naka, Fanos Ngwenya, Bronwyn Seaborne, and Jane Thompson. (OPT000579903; OPT000601403).

32.    Admit that Optima received complaints in at least the following months from AFP that Optima failed to make payments as they became due:

    (a)    September 2013 (*see* BBG_00256014; OPT000210636);
    (b)    October 2013 (*see* OPT000213430; BBG_00196212);
    (c)    November 2013 (*see* BBG_00215221);
    (d)    May 2014 (*see* OPT000120782);
    (e)    October 2014 (*see* OPT000120782; OPT000032702);
    (f)    November 2014 (*see* OPT000033141; OPT000120782; OPT000541308);
    (g)    January 2015 (*see* OPT000124792);
    (h)    February 2015 (*see* OPT000371332; BBG_00074748; OPT000038113);
    (i)    March 2015 (*see* BBG_00074748; OPT000503930; OPT000371332);
    (j)    April 2015 (*see* OPT000041132).

33.    Admit that AFP suspended or continued suspension of Optima's ability to access AFP's services in at least the following months:

    (a)    September 2013 (*see* OPT000210636);
    (b)    October 2013 (*see* OPT000213492; BBG_00275386);
    (c)    November 2013 (*see* BBG_00215221);
    (d)    January 2015 (*see* OPT000124792; BBG_00056299; BBG_00059522);
    (e)    February 2015 (*see* OPT000038113; BBG_00062811; BBG_00061278);
    (f)    March 2015 (*see* BBG_00075171; BBG_00077516);
    (g)    April 2015 (*see* OPT000041132; BBG_00085386).

34.    Admit that AFP's suspension of Optima's ability to access AFP's services in the periods identified in Request 33 were a result of Optima's Nonpayment or Late Payment of AFP fees.

35.    Admit that Optima received complaints in at least the following months from A24 that Optima failed to make payments as they became due:

    (a)    April 2013 (OPT000572696);
    (b)    October 2013 (BBG_00253822);
    (c)    November 2013 (BBG_00253822, BBG_00265433);
    (d)    December 2013 (BBG_00246757);
    (e)    May 2014 (OPT000572769);
    (f)    July 2014 (OPT000261119);
    (g)    August 2014 (OPT000342311; OPT000334737);
    (h)    September 2014 (OPT000342311, OPT000342316);
    (i)    October 2014 (OPT000120942; OPT000032702);
    (j)    November 2014 (OPT000120942; OPT000541308);
    (k)    February 2015 (OPT000526314).

36.    Admit that Optima:

    (a)    Received or acknowledged receipt of a threat from A24 to "withhold services" from Optima in November 2013. (BBG_00253822);

17

(b)     Learned or acknowledged learning, in October 2014, that A24 had notified Bloomberg of "nonpayment and breach of contract" by Optima. (OPT000032702);

(c)     Received or acknowledged receipt, in November 2014, of a "threa[t]" from A24 to pursue "legal action" against Optima. (OPT000033225; OPT000121046; OPT000120942).

37.    Admit that Optima received complaints in at least the following months from Getty that Optima failed to make payments as they became due:

(a)     May 2013 (OPT000138431, OPT000138433);
(b)     May 2014 (OPT000107037; OPT000107039);
(c)     January 2014 (OPT000224446);
(d)     February 2014 (OPT000227645; OPT000227151; OPT000227665);
(e)     March 2014 (OPT000229503);
(a)     April 2014 (OPT000107037, OPT000107039);
(b)     May 2014 (OPT000107037);
(c)     August 2014 (OPT000263831);
(d)     November 2014 (OPT000541308);
(e)     February 2015 (OPT000038529).

38.    Admit that Optima agreed to supply accommodations at House J Resorts for certain Employees of Optima, including contractors and/or members of technical teams engaged to build and outfit Optima's Lagos Studio (hereinafter the "Optima House J Residents").  (*See, e.g.*, OPT000035366).

39.    Admit that Optima received complaints in at least the following months from House J Resorts that Optima failed to make payments as they became due:

(a)     March 2014 (*see, e.g.*, OPT000229215);
(b)     May 2014 (*see, e.g.*, OPT000251412; OPT000251689; OPT000321298; OPT000251646);
(c)     June 2014 (*see, e.g.*, OPT000237835; OPT000258531);
(d)     August 2014 (*see, e.g.*, OPT000481529);
(e)     October 2014 (*see, e.g.*, OPT000347107);
(f)     April 2015 (*see, e.g.*, OPT000378850).

40.    Admit that as a result of Optima's Nonpayment or Late Payment of House J Resorts, House J Resorts locked certain Optima House J Residents out of their hotel rooms in May 2014 and December 2014. (*See, e.g.*, OPT000251685; OPT000251689).

41.    Admit that as a result of Optima's Nonpayment or Late Payment of House J Resorts, House J Resorts threatened to lock certain Optima House J Residents out of their hotel rooms in August 2014 and December 2014.  (*See, e.g.*, OPT000481529; OPT000168094; OPT000035719).

18

42.    Admit that Optima owed payments to at least the following Vendors in at least the following months:

(a)    **AMCON**, in September 2014 (OPT000029353; OPT000029372; OPT000029374) and October 2014 (OPT000032927; OPT000032931);

(b)    **House J Resorts**, on the dates outlined at Request 39, including but not limited to October 2014 (OPT000347107) and April 2015 (OPT000378850);

(c)    **Halogen Security Company Ltd.**, in October 2014 (OPT000030569).

(d)    **Citi Merit Logistics**, in October 2014 (OPT000032144; OPT000270967) and January 2015 (OPT000362058);

(e)    **Findrex Travels and Tours Ltd.**, in October 2014 (OPT000032565);

(f)    **Allied Computers**, in November 2014 (OPT000245640);

(g)    **The CFG Advisory**, in January 2015 (OPT000038008);

(h)    **Netcom Africa**, in February 2015 (OPT000086071);

(i)    **Glitzy Travels Ltd.**, in April 2015 (OPT000191854).

43.    Admit that the payments described in Request 42 were invoiced in Nigerian naira.

44.    Admit that the payments described in Request 42 could have been paid in Nigerian naira.

45.    Admit that the payments described in Request 42 were past due.

46.    Admit that Optima received or discussed complaints, in or about at least the following months, from at least the following additional Vendors, that Optima failed to make payments to those Vendors as they became due:

(a)    **January 2013**:
    (i)    The CFG Advisory (OPT000145621);
    (ii)    Harlequin (OPT000136508).

(b)    **March 2013**:
    (i)    Christy Media Solutions (OPT000193719).

(c)    **April 2013**:
    (i)    Miramedia Ltd. (OPT000581134).

(d)    **May 2013**:
    (i)    Christy Media Solutions (OPT000138431; OPT000138433);
    (ii)    Globecast (OPT000195186, OPT000195188);
    (iii)    Lloyd Anderson Ltd. (OPT000138431; OPT000138433);
    (iv)    Squallstar Ltd. (OPT000581462).

(e)    **June 2013**:
    (i)    ABS (OPT000197023; OPT000196925; OPT000197006);
    (ii)    Alder Consulting (OPT000143694);
    (iii)    Christy Media Solutions (OPT000196951; OPT000198184);

       (iv)    Squallstar Ltd. (OPT000196951).

(f)    **July 2013**:
       (i)     Christy Media Solutions (OPT000199668);
       (ii)    Squallstar Ltd. (OPT000199804; OPT000202305).

(g)    **August 2013**:
       (i)     Artscape (OPT000434730);
       (ii)    Christy Media Solutions (OPT000203280);
       (iii)   Squallstar Ltd. (OPT000202305).

(h)    **September 2013**:
       (i)     Absolutely Admin (OPT000144640);
       (ii)    Allied Computers (OPT000529973);
       (iii)   Miramedia Ltd. (OPT000143513; BBG_00251667);
       (iv)    Squallstar Ltd. (OPT000210293).

(i)    **October 2013**:
       (i)     ABS (BBG_00209215);
       (ii)    Arqiva (BBG_00209215);
       (iii)   Audio Network (BBG_00260764);
       (iv)    Christy Media Solutions (BBG_00273774; BBG_00273780);
       (v)    Lloyd Anderson Ltd. (OPT000217123).

(j)    **November 2013**:
       (i)     Christy Media Solutions (OPT000220975);
       (ii)    Lloyd Anderson Ltd. (OPT000217123);
       (iii)   Manzini Media (OPT000216636; OPT000216638);
       (iv)    Miramedia Ltd. (OPT000148873);
       (v)    Profiliant (OPT000217876; OPT000217878).

(k)    **December 2013**:
       (i)     Globecast (OPT000221117);
       (ii)    Heritage Bank (OPT000221538, OPT000221540).

(l)    **January 2014**:
       (i)     Emergence Growth (OPT000225709);
       (ii)    EmSes (OPT000224497; OPT000225709);
       (iii)   Johannesburg Stock Exchange (OPT000225709);
       (iv)    Manzini Media (OPT000225709);
       (v)    Office Management Services (OPT000153603);
       (vi)    Scena Pro (OPT000225067; BBG_00273343);
       (vii)   Telemedia (Pty) Ltd. (OPT000225709).

(m)    **February 2014**:
       (i)     AM Limited (OPT000537966);
       (ii)    Contractors retained to construct the studio at Johannesburg Stock Exchange (BBG_00189670);

      (iii)    Squallstar Ltd. (OPT000227686);
      (iv)    Telemedia (Pty) Ltd. (OPT000228365; OPT000228367);
      (v)    Ultimate Interiors (OPT000227866).

(n)    **March 2014**:
      (i)    BDA Creative Limited (OPT000438494; OPT000438498; OPT000438499);
      (ii)    Johannesburg Stock Exchange (OPT000229343).

(o)    **April 2014**:
      (i)    Centrifugal (OPT000233440);
      (ii)    FA & JM Electrical & Engineering (OPT000233440);
      (iii)    LYT Architecture (OPT000233440);
      (iv)    Playbox (OPT000161543);
      (v)    Projects Department Ltd. (OPT000161964).

(p)    **May 2014**:
      (i)    ABS (OPT000322960);
      (ii)    Citi Merit Logistics (OPT000348132; OPT000348137, OPT000348141; OPT000348143);
      (iii)    Film Freight (OPT000108639; OPT000108641);
      (iv)    Flax Films (OPT000108639; OPT000108641);
      (v)    Flight Centre (South Africa) Pty Ltd. (OPT000324227; OPT000108639; OPT000108641);
      (vi)    Lucro Auditing PLC (OPT000108639; OPT000108641);
      (vii)    Richard Kasselman (OPT000108639; OPT000108641);
      (viii)    Satlink Communications Ltd. (OPT000234206);
      (ix)    Sulanji Siwale (Cedar Point Investment Group) (OPT000559194);
      (x)    WTS Group of Companies (OPT000477070);
      (xi)    Transcription Services (OPT000108639; OPT000108641).

(q)    **June 2014**:
      (i)    Allied Computers (OPT000237184; OPT000237186);
      (ii)    Bloomberg Sports (OPT000258042);
      (iii)    Citi Merit Logistics (OPT000348133);
      (iv)    Miles Massey (Massey Productions) (OPT000325690; OPT000587840);
      (v)    Projects Department (OPT000236749);
      (vi)    Squallstar Ltd. (OPT000237329);
      (vii)    Team Talk Media (Pty) Ltd. (OPT000302864).

(r)    **July 2014**:
      (i)    Africa Practice (OPT000238357);
      (ii)    Bloomberg Sports (OPT000166241);
      (iii)    Career Legal (OPT000166765, OPT000166767, OPT000166768);
      (iv)    Citi Merit Logistics (OPT000348131);
      (v)    EmSes (OPT000262577);

(vi)   Flight Centre (South Africa) Pty. Ltd. (OPT000261116);
(vii)  HYF (OPT000166241);
(viii) Johannesburg Stock Exchange (OPT000259216);
(ix)   Lucro Auditing PLC (OPT000111232, OPT000111233, OPT000111234, OPT000111235, OPT000111236, OPT000111237);
(x)    Squallstar Ltd. (OPT000110822);
(xi)   Team Talk Media (Pty) Ltd. (OPT000302864);
(xii)  WTS Group of Companies (OPT000112422);
(xiii) Yvent Kouture (OPT000238181).

(s)  **September 2014**:
(i)    Africa Practice (OPT000345462; OPT000166241);
(ii)   AM Limited (OPT000031674);
(iii)  AMCON (OPT000029353; OPT000029372; OPT000029374);
(iv)   Bloomberg Sports (OPT000555583);
(v)    CIM Global Business (in Mauritius) (OPT000171580; OPT000171582; OPT000171583);
(vi)   Flight Centre (South Africa) Pty Ltd. (OPT000242781; OPT000242783);
(vii)  Ikeja Electric Disribution Company Plc (OPT000171585; OPT000171586);
(viii) Optimum Corporate Communications (OPT000243180; OPT000243640);
(ix)   Team Talk Media (Pty) Ltd. (OPT000302847; OPT000302864).

(t)  **October 2014**:
(i)    Africa Practice (OPT000173578; OPT000166241);
(ii)   AM Limited (OPT000031674);
(iii)  AMCON (OPT000032927, OPT000032931);
(iv)   Citi Merit Logistics (OPT000032144, OPT000270967);
(v)    FA & JM Electrical and Engineering (OPT000268744);
(vi)   Findrex Travels and Tours Ltd. (OPT000032565);
(vii)  Globecast (OPT000031532);
(viii) Google (OPT000029476);
(ix)   Halogen Security Company Ltd. (OPT000030569);
(x)    MB Capital Services GmbH (OPT000490108);
(xi)   Optimum Corporate Communications (OPT000243804);
(xii)  Quirk E-Marketing (OPT000524284);
(xiii) VizRT (OPT000031978).

(u)  **November 2014**:
(i)    Allied Computers (OPT000245640);
(ii)   Globecast (OPT000541308);
(iii)  MB Capital Services GmbH (OPT000355275; OPT000355276);
(iv)   Octopus Newsroom (OPT000033743; OPT000033748);
(v)    Sashkeys Media Ltd.  (OPT000356809);

(vi)    Satlink Communications Ltd. (OPT000033233; OPT000033234);
(vii)   Sulanji Siwale (Cedar Point Investment Group) (OPT000559194; OPT000541308);
(viii)  VizRT (OPT000541308).

(v)   **December 2014**:
     (i)    Sulanji Siwale (Cedar Point Investment Group) (OPT000559194)
     (ii)   VizRT (OPT000043673).

(w)   **January 2015**:
     (i)    VizRT (OPT000043738);
     (ii)   CFG Advisory (OPT000038008);
     (iii)  Citi Merit Logistics (OPT000362058).

(x)   **February 2015**:
     (i)    Malcolm Fried (OPT000038221);
     (ii)   MB Capital GmbH (OPT000125154);
     (iii)  Netcom Africa (OPT000086071);
     (iv)  WPEngine Support (OPT000086292).

(y)   **March 2015**:
     (i)    Johannesburg Stock Exchange (OPT000127289);
     (ii)   Globecast (OPT000378171);
     (iii)  Proactive UK Ltd. (OPT000526994);
     (iv)  Richard Armah (OPT000563587);
     (v)   Sashkeys Media Ltd. (OPT000287563);
     (vi)   Ventra Media Group (OPT000526871);
     (vii)  VizRT (OPT000040621).

(z)   **April 2015**:
     (i)    Ateme S.A. (OPT000514994);
     (ii)   Glitzy Travels Ltd. (OPT000191854);
     (iii)  Midia Pro (OPT000041026, OPT000191441);
     (iv)  Richard Armah (OPT000563587).

(aa)  **May 2015**:
     (i)    Squallstar Ltd. (OPT000528409).

(bb)  **June 2015**:
     (i)    Squallstar Ltd. (OPT000528409).

(cc)  **July 2015**:
     (i)    Squallstar Ltd. (OPT000528409).

47.   Admit that Optima received complaints that Optima failed to make payments as they became due to **Fred Allen** in at least the following months:

(a)   June 2013 (OPT000198184; OPT000198189);

(b)     July 2013 (OPT000199668; OPT000199669);

(c)     October 2013 (BBG_00273774; BBG_00273780);

(d)     December 2013 (OPT000222161);

(e)     May 2014 (OPT000108307; OPT000108310);

(f)     July 2014 (OPT000332852).

48.     Admit that Optima received complaints that Optima failed to make payments as they became due to **Graham Bryce** in at least the following months:

(a)     October 2013 (BBG_00273774; BBG_00273780);

(b)     December 2013 (OPT000222161);

(c)     June 2014 (OPT000110162).

49.     Admit that Optima received complaints that Optima failed to make payments as they became due to **Pannie Christou** in at least the following months:

(a)     June 2013 (OPT000198184; OPT000198190);

(b)     July 2013 (OPT000199668; OPT000199671; OPT000199674);

(c)     August 2013 (OPT000199668; OPT000199671; OPT000199674; OPT000203208);

(d)     October 2013 (BBG_00273774; BBG_00273780);

(e)     April 2014 (OPT000475981; OPT000475982);

(f)     May 2014 (OPT000108502; OPT000108307; OPT000108310);

(g)     June 2014 (OPT000110162);

(h)     November 2014 (OPT000541308);

(i)     January 2015 (OPT000363369);

(j)     May 2015 (OPT000518563).

50.     Admit that Optima received complaints that Optima failed to make payments as they became due to **Steve Halis** in at least the following months:

(a)     June 2013 (OPT000198184; OPT000198191).

51.     Admit that Optima received complaints that Optima failed to make payments as they became due to **Alan Mercer** in at least the following months:

(a)     December 2013 (BBG_00253541);

(b)     January 2014 (BBG_00253541).

52.     Admit that Optima received complaints that Optima failed to make payments as they became due to **Gary O'Callaghan** in at least the following months:

(a)     May 2013 (OPT000197116);

(b)     June 2013 (OPT000197116; OPT000198184; OPT000198188);

(c)     July 2013 (OPT000199755; OPT000199668; OPT000199672; OPT000199676);

(d)     August 2013 (OPT000203280; OPT000203283; OPT000203284; OPT000203286; OPT000203289; OPT000203290);

24

(e)     October 2013 (BBG_00273774; BBG_00273780);
(f)     May 2014 (OPT000108307);
(g)     June 2014 (OPT000256066; OPT000110162; OPT000258169);
(h)     July 2014 (OPT000261548);
(i)     August 2014 (OPT000568543);
(j)     September 2014 (OPT000342165);
(k)     November 2014 (OPT000352912; OPT000541308).

53.    Admit that Optima received complaints that Optima failed to make payments as they became due to **Jeremy Roberts** in at least the following months:

(a)     July 2014 (OPT000261313);
(b)     January 2015 (OPT000281681; OPT000366064);
(c)     February 2015 (OPT000185308).

54.    Admit that Optima received complaints that Optima failed to make payments as they became due to **Nick Sale** in at least the following months:

(a)     April 2014 (OPT000475981; OPT000475982);
(b)     May 2014 (OPT000108307; OPT000108310);
(c)     June 2014 (OPT000110162);
(d)     July 2014  (OPT000239944);
(e)     January 2015 (OPT000124319);
(f)     March 2015 (OPT000373056; OPT00502037);
(g)     April 2015 (OPT000044663);
(h)     May 2015 (OPT000529196; OPT000576263).

55.    Admit that Optima received complaints that Optima failed to make payments as they became due to **Dennis Somerton** in at least the following months:

(a)     October 2013 (BBG_00273774; BBG_00273780).

56.    With respect to the invoice from Bloomberg to Optima entitled "Option Agreement – One Time Fee" and dated 02/07/2012 (BBG_00167277):

(a)     Admit that the invoice specified that "payment [was] due upon receipt." (BBG_00167277);
(b)     Admit that the invoice was received by Optima on or around February 8, 2012. (BBG_00167274);
(c)     Admit that Optima paid the invoice on or around April 11–13, 2012. (BBG_00184744);
(d)     Admit that this payment was late.

57.    With respect to the invoice from Bloomberg to Optima entitled "1Q12 License Fee" and dated 02/07/2012 (BBG_00167276):

(a)     Admit that the invoice specified that "payment [was] due February 15, 2012." (BBG_00167276);

(b)     Admit that Optima paid the invoice on or around October 11-16, 2012. (BBG_00187129);

(c)     Admit that this payment was late.

58.     With respect to the invoice from Bloomberg to Optima entitled "OMG Nigeria 2Q12 License Fee" and dated 04/25/2012 (BBG_00254233):

(a)     Admit that the invoice specified that "payment [was] due immediately. (BBG_00254233);

(b)     Admit that Optima made a partial payment of $62,500 towards the invoice on or around October 11–16, 2012. (BBG_00187129);

(c)     Admit that Optima made the remaining payment of $125,000 towards the invoice on or around July 15, 2013. (BBG_00003066);

(d)     Admit that this payment was late.

59.     With respect to the invoice from Bloomberg to Optima entitled "OMG Nigeria 3Q12 License Fee" and dated 07/01/2012 (BBG_00167404):

(a)     Admit that the invoice specified that "payment [was] due immediately." (BBG_00167404);

(b)     Admit that Optima paid the invoice on or around July 15, 2013. (BBG_00003066);

(c)     Admit that this payment was late.

60.     With respect to the invoice from Bloomberg to Optima entitled "OMG Nigeria 4Q12 Lic. Fee" and dated 10/01/2012 (BBG_00276456):

(a)     Admit that the invoice specified that "payment [was] due immediately." (BBG_00276456);

(b)     Admit that Optima paid the invoice on or around July 15, 2013. (BBG_00003066);

(c)     Admit that this payment was late.

61.     With respect to the invoice from Bloomberg to Optima entitled "Incremental 2012" and dated 05/15/2013 (OPT000138459):

(a)     Admit that the invoice specified that "payment [was] due immediately." (OPT000138459);

(b)     Admit that Optima paid the invoice on or around July 15, 2013. (BBG_00003066);

(c)     Admit that this payment was late.

62.     With respect to the invoice from Bloomberg to Optima entitled "1Q13 License Fee" and dated 05/15/2013 (OPT000138460):

(a)     Admit that the invoice specified that "payment [was] due immediately." (OPT000138460);

(b)    Admit that Optima made a partial payment of $375,000 towards the invoice on or around July 15, 2013. (BBG_00003066);

(c)    Admit that Optima made the remaining payment of $62,500 towards the invoice on or around August 7-12, 2013. (BBG_00183917);

(d)    Admit that this payment was late.

63.    With respect to the invoice from Bloomberg to Optima entitled "2Q13 License Fee" and dated 05/15/2013 (OPT000138461):

(a)    Admit that the invoice specified that "payment [was] due immediately." (OPT000138461);

(b)    Admit that Optima paid the invoice on or around August 7-12, 2013. (BBG_00183917);

(c)    Admit that this payment was late.

64.    With respect to the invoice from Bloomberg to Optima entitled "3Q13 License Fee" and dated 07/09/2013 (OPT000199623):

(a)    Admit that the invoice specified that "payment [was] due immediately." (OPT000199623);

(b)    Admit that Optima made a partial payment of $250,000 towards the invoice on or around November 29–December 2, 2013. (BBG_00004065);

(c)    Admit that Optima made the remaining payment of $187,500 towards the invoice on or around February 11, 2014.  (BBG_00004231);

(d)    Admit that this payment was late.

65.    With respect to the invoice from Bloomberg to Optima entitled "4Q13 License Fee" and dated 10/01/2013 (BBG_00276457):

(a)    Admit that the invoice specified that "payment [was] due immediately." (BBG_00276457);

(b)    Admit that Optima made a partial payment of $312,500 towards the invoice on or around February 11, 2014. (BBG_00004231);

(c)    Admit that Optima paid the remaining $125,000 no earlier than a date on or around May 22, 2014. (BBG_00009150);

(d)    Admit that these payments were late.

66.    With respect to the invoice from Bloomberg to Optima entitled "OMG SA License Fee" and dated 01/01/2014 (OPT000107936):

(a)    Admit that the invoice specified that "payment [was] due immediately."  (OPT000107936);

(b)    Admit that Bloomberg called in Optima's bank guarantee from Standard Chartered Bank on May 21, 2014 to pay off at least a portion of this invoice. (BBG_00169302);

(c)    Admit that Optima made a partial payment towards the invoice on or around May 22, 2014. (BBG_00009150);

(d)  Admit that despite Optima's partial payment, Bloomberg had to rely on the bank guarantee for the remainder of the payment;

(e)  Admit that the payment Optima made toward this invoice was late.

67.  With respect to the invoice from Bloomberg to Optima entitled "OMG SA License Fee" and dated 04/01/2014 (OPT000107937):

(a)  Admit that the invoice specified that "payment [was] due immediately." (OPT000107937);

(b)  Admit that Bloomberg called in Optima's bank guarantee from Standard Chartered Bank on May 21, 2014 to pay off at least a portion of the invoice. (BBG_00169302);

(c)  Admit that Optima made a partial payment towards the invoice on or around May 22, 2014. (BBG_00009150);

(d)  Admit that despite Optima's partial payment, Bloomberg had to rely on the bank guarantee for the remainder of the payment;

(e)  Admit that the payment Optima made toward this invoice was late.

68.  With respect to the invoice from Bloomberg to Optima entitled "Q3 2014 License Fee" and dated 07/03/2014 (OPT000037029):

(a)  Admit that the invoice specified that "payment [was] due immediately." (OPT000037029);

(b)  Admit that Bloomberg called in Optima's bank guarantee from Standard Chartered Bank on January 8, 2015 to pay off the invoice. (BBG_00099057).

69.  With respect to the invoice from Bloomberg to Optima entitled "OMG SA 4Q2014 License Fee" and dated 10/02/2014 (OPT000123431):

(a)  Admit that the invoice specified that "payment [was] due immediately." (OPT000123431);

(b)  Admit that Bloomberg called in Optima's bank guarantee from Standard Chartered Bank on January 8, 2015 to pay off the invoice. (BBG_00099057).

70.  With respect to the invoice from Bloomberg to Optima entitled "OMG SA 1Q2015 License Fee" and dated 01/01/2015 (OPT000123835):

(a)  Admit that the invoice specified that "payment [was] due immediately." (OPT000123835);

(b)  Admit that Bloomberg called in Optima's bank guarantee from Standard Chartered Bank on March 30, 2015 to pay off $375,000 of the invoice. (BBG_00099081);

(c)  Admit that Optima never paid the remaining $187,500 due on the invoice. (BBG_00106230).

71.     With respect to the invoice from Bloomberg to Optima entitled "OMG SA 2Q2015 License Fee" and dated 04/02/2015 (OPT000130182):

    (a)     Admit that the invoice specified that "payment [was] due immediately." (OPT000130182);

    (b)     Admit that Optima never paid the $562,500 due on the invoice. (BBG_00106230).

72.     Admit that on September 5, 2013, Optima attributed its inability to satisfy some or all of its past, current, or future payment obligations related to the Project to insufficient "cash-flow." (OPT000208041).

73.     Admit that on May 9, 2014, Optima indicated that it possessed "limited funds." (OPT000251708).

74.     Admit that on June 13, 2014, Optima attributed its inability to satisfy some or all of its past, current, or future payment obligations related to the Project to "a cash flow issue." (OPT000257503).

75.     Admit that on June 27, 2014, Optima attributed its inability to satisfy some or all of its past, current, or future payment obligations related to the Project to "operational cash flow" that was "inadequate and often-times provided very late." (OPT000165228).

76.     Admit that on July 12, 2014, Optima attributed its inability to satisfy some or all of its past, current, or future payment obligations related to the Project to "a cash flow issue." (OPT000261119).

77.     Admit that on August 19, 2014, Optima attributed its inability to satisfy some or all of its past, current, or future payment obligations related to the Project to a "difficult" "cash flow situation . . . over the last 6 months." (OPT000342311).

78.     Admit that on September 10, 2014, Optima attributed its inability to satisfy some or all of its past, current, or future payment obligations related to the Project to a "very low cash flow position" and the receipt of "next to no sales funds." (OPT000568778).

79.     Admit that on September 25, 2014, Optima attributed its inability to satisfy some or all of its past, current, or future payment obligations related to the Project to "dismal revenue" and "the lack of performance by the [Optima] Sales team." (OPT000029160).

80.     Admit that on October 13, 2014, Optima attributed its inability to satisfy some or all of its past, current, or future payment obligations related to the Project to a lack of "cash flow" and not to a "challenge" in "conver[ting]" Nigerian naira to foreign currency. (OPT000347787).

81.     Admit that on November 12, 2014, Optima attributed its inability to satisfy some or all of its past, current, or future payment obligations related to the Project to "current cash flow issues." (OPT000033225).

82.     Admit that on January 28, 2015, a financial consultant retained by Optima advised Optima that:

    (a)     Optima was "technically insolvent" and lacked "a functional operating budget." (OPT000526104).

    (b)     Optima's "banks both Keystone and Heritage want to close in on you as the loans are non performing."  (OPT000526104).

83.     Admit that on March 12, 2015, Optima attributed its inability to satisfy some or all of its past, current, or future payment obligations related to the Project to "cash flow issues." (OPT000526871).

84.     Admit that on April 21, 2015, Optima attributed its inability to satisfy some or all of its past, current, or future payment obligations related to the Project to "cash flow challenges." (OPT000191834).

85.     Admit that on April 24, 2015, Optima attributed its inability to satisfy some or all of its past, current, or future payment obligations related to the Project to a "lack" of "availability of cash." (OPT000101948).

86.     Admit that:

    (a)     On April 22, 2015, Stanbic IBTC denied an application by Optima for an $11 million term loan facility and a $1 million overdraft facility. (OPT000191932).

    (b)     On April 29, 2015, Richard Harrison contacted Bloomberg by email and stated that Optima had received "approval of a USD denominated facility by Stanbic IBTC Bank, which allows us to ensure we have operational funding in hard currency outside Nigeria and for the foreseeable future." (BBG_00018407).

    (c)     The loan facility Richard Harrison described as having been "approved" on April 29, 2015, described at Request 86(b), is the same loan facility that Stanbic IBTC declined to approve on April 21, 2015, described at Request 86(a).

87.     Admit that:

    (a)     Optima retained Malcolm Fried as a consultant.

    (b)     Malcolm Fried prepared, at Optima's request, an assessment of Optima operations and the "restructuring" of BTVA.  (*See, e.g.*, OPT000192325, OPT000192326.)

    (c)     On April 28, 2015, Malcolm Fried informed Rotimi Pedro that Optima would not be ready to "launch . . . live output" for at least 12 weeks starting "[f]rom the moment that BTVA is confident it can commission

and install [certain] systems and technology." (OPT000192325, OPT000192326.)

(d)    Malcolm Fried described the timeline at Request 87(c) as the "earliest possible live launch." (OPT000192325, OPT000192326.)

88.    Admit that by May 7, 2015:

(a)    Optima had not completed construction of the Lagos Studio.

(b)    The technical and broadcast systems in the Lagos Studio were not yet capable of facilitating transmission of programming to the specifications outlined in the Agreement.

(c)    Optima had not yet produced live programming.

89.    Admit that Heritage Bank:

(a)    Gained control in 2015 of the Lagos Studio formerly belonging to Optima. (*see, e.g.*, OPT000600563; OPT000600571; OPT000587399);

(b)    Now controls the Lagos Studio formerly belonging to Optima. (*see, e.g.*, OPT000600563; OPT000600571; OPT000587399);

(c)    Acquired, in 2015, a right to possess, access, or otherwise control the disposition of property (including but not limited to computer servers, cameras, and other equipment used in television broadcasting) purchased or used by Optima in connection with the Project.

90.    Admit that in 2015, Heritage Bank acquired possession or control over BTVA Nigeria or a successor entity to BTVA Nigeria (hereinafter, for purposes of Requests 90-94, "BTVA").

91.    Admit that:

(a)    On June 8, 2015, Optima forwarded to Heritage Bank a document with the title "Strategic Roadmap of BTVA Towards Recovery." (OPT000396596, OPT000396597);

(b)    In July 2015, Heritage Bank directed Optima to implement "strategic changes/plans" to its operations, which included that "only 50% of current salaries would be paid." (OPT000600667);

(c)    Not later than July 14, 2015, Heritage Bank made plans to "take over the main studio for what was BTVA" and to produce programming. (BBG_00020479, BBG_00020480);

(d)    On July 31, 2015, Heritage Bank directed Optima to "pay the 50% of the salaries" to staff and "cut staff." (OPT000578953).

92.    Admit that on or around October 2015, Heritage Bank:

(a)    Sent Optima (as BTVA) a "BTVA Sales Presentation Template" to Optima (as BTVA) for Optima's "review." (OPT000316529);

(b)    Described "BTVA Limited" as "operat[ing] out of our ultra modern broadcast studios @ 33 Bateye Street Ikeja, Lagos," and explained that the

"[s]tudio (though flexible) was designed and built . . . under technical assistance from Bloomberg International LLP." (*See, e.g.*, OPT000316529, OPT000316531);

(c)    Intended that the Sales Presentation Template be used in connection with attempts to secure "annual sponsorship" for BTVA programming. (*See, e.g.*, OPT000316529, OPT000316531).

93.    Admit that on or around October 2015:

(a)    The channel re-launched as BTVA commenced its operations in Lagos (*see, e.g.*, https://www.airwavesreport.com/business/489-heritage-bank-at-btva-media-launch; http://www.theelitesng.com/photo-news-heritage-bank-at-btva-media-launch/; https://www.instagram.com/p/9atsKUvVSM/);

(b)    Rotimi Pedro and a representative of Heritage Bank appeared jointly at the launch described at Request 93(a) (*see, e.g., id.*);

(c)    Richard Harrison informed Bloomberg that the channel re-launched as BTVA was "still using the Bloomberg set, graphics, fonts, terminals." (BBG_00001211);

(d)    The channel re-launched as BTVA was in fact "still using the Bloomberg set, graphics, fonts, terminals." (BBG_00001211);

(e)    Rotimi Pedro was credited as Executive Producer of the programming of the channel re-launched as BTVA. (BBG_00001211).

94.    Admit that:

(a)    From at least October 2015 to November 2015, BTVA used a Bloomberg terminal in its programming;

(b)    From at least October 2015 to December 2015, BTVA used an Instagram account with the handle "@btvanewsroom";

(c)    From at least October 2015 to May 2016, BTVA operated out of the Lagos Studio (OPT000316531; BBG_00110639);

(d)    From at least October 2015 to May 2016, BTVA displayed an orange (or yellow) and white totem featuring the word "LAGOS" in its programming.

(e)    From at least October 2015 to September 2016, BTVA used an orange (or yellow) and white logo featuring the words "BTVA," "BTVA Limited," and "premium business broadcasting."

(f)    From at least October 2015 to September 2016, BTVA used a Twitter account with the handle "@btvanewsroom" or "@btvanews."

(g)    From at least October 2015 to September 2016, BTVA used a YouTube channel entitled "Btva Newsroom."

95.     Admit that any or all of the following individuals and entities stand to benefit financially from any recovery in this Litigation:

(a)     Rotimi Pedro;
(b)     Richard Harrison;
(c)     Simon Miller;
(d)     Heritage Bank.


Dated:  May 28, 2019

                          **PAUL, WEISS, RIFKIND, WHARTON
                          & GARRISON LLP**

             By:     /s/  Lorin L. Reisner
                     Brad S. Karp (bkarp@paulweiss.com)
                     Lorin L. Reisner (lreisner@paulweiss.com)
                     Justin Anderson (janderson@paulweiss.com)
                     PAUL, WEISS, RIFKIND, WHARTON &
                     GARRISON LLP
                     1285 Avenue of the Americas
                     New York, NY 10019-6064

                     *Attorneys for Defendant Bloomberg L.P.*